UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------- X

NICOLE MINELLI, as Administratix of the estate of Salvatore Limongelli,

                          Plaintiff,

  -against-

THE CITY OF NEW YORK, a municipal entity; New York City Police Department Sergeant DORIS LOPEZ; New York City Police Department Detective BRIAN D. O'HANLON (Shield # 3581); JOHN DOEs 1-5, individually and in their official capacities,

                          Defendants.

------------------------------------------------------------------------------- X

No. 12-cv-08731 (KBF)

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiff NICOLE MINELLI, as Administratix of the estate of Salvatore Limongelli, by her attorneys, Beldock Levine & Hoffman LLP, as and for her complaint against the City of New York and all defendant parties, alleges as follows:

**PRELIMINARY STATEMENT**

1.   This is a civil rights action in which the plaintiff, NICOLE MINELLI, as Administratix of the estate of Salvatore Limongelli, seeks relief for defendants' violation, under color of state law, of Mr. Limongelli's rights, privileges and immunities secured by 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution; Article I §§ 6 and 12 of the New York State Constitution; and New York State statutory, administrative, and common law

2.   Defendants THE CITY OF NEW YORK, a municipal entity; and New York City Police Department Sergeant DORIS LOPEZ, New York City Police Department Detective

      BRIAN D. O'HANLON (Shield # 3581), and JOHN DOEs 1-5, individually and, as the case may be, in their official capacities, jointly and severally, did cause Mr. Limongelli to be subject to, *inter alia*, false imprisonment; denial of medical care; negligent, reckless, and intentional infliction of emotional distress; and negligence, causing him loss of liberty and physical and mental injury.

3. The plaintiff seeks on behalf of Mr. Limongelli's estate: (i) compensatory damages for physical injury, psychological and emotional distress, and other financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iii) such other and further relief, including costs and attorneys fees, as this Court deems equitable and just.

## JURISDICTION

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(3) and (4), as this action seeks redress for the violation of Mr. Limongelli's constitutional and civil rights.

5. The plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

6. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1), as this is the judicial district in which defendant THE CITY OF NEW YORK resides; and 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events or omissions giving rise to Mr. Limongelli's claims took place.

## JURY DEMAND

7. The plaintiff demands a trial by jury in this action on each and every one of her claims for which a jury trial is legally available.

## THE PARTIES

8. SALVATORE LIMONGELLI was a citizen of the United States and was at all times relevant to this complaint a resident of the City of New York, County of Bronx, State of New York. Mr. Limongelli died on or about March 14, 2013.

9. The plaintiff NICOLE MINELLI brings this action as Administratix of Mr. Limongelli's estate. The Bronx County Surrogate's Court issued Ms. Minelli Letters of Limited Administration for Mr. Limongelli's estate on November 12, 2013. Ms. Minelli is a resident of the City of New York, County of Bronx, State of New York.

10. Defendant THE CITY OF NEW YORK ("the CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, and does maintain the New York City Police Department ("the NYPD"), which acts as its agent in the area of law enforcement, and the New York City Department of Corrections ("the DOC"), which acts as its agent in the area of detention and incarceration. The CITY is ultimately responsible for the NYPD and the DOC, and assumes the risks incidental to the maintenance of a police force and the employment of police officers, as well as a corrections staff and corrections officers.

11. Defendants New York City Police Department Sergeant DORIS LOPEZ, and New York City Police Department Detective BRIAN D. O'HANLON (Shield # 3581), are, or were at the times relevant to this complaint, Police Officers employed by the NYPD who were

involved in the false imprisonment of the Mr. Limongelli, as well as all of the actions and conduct associated therewith, including, *inter alia*, wrongfully detaining Mr. Limongelli without good faith, reasonable suspicion, probable cause, or legal justification. These defendants are sued individually and in their official capacities.

12. Defendants JOHN DOEs 1-5 are, or were at the times relevant to this complaint, Police Officers employed by the NYPD, Corrections Officers employed by the DOC, and/or medical personnel working on Riker's Island who were involved in the false imprisonment of Mr. Limongelli and the denial of necessary medical care for Mr. Limongelli's serious medical needs, as well as all of the actions and conduct associated therewith, including, *inter alia*, wrongfully detaining Mr. Limongelli without good faith, reasonable suspicion, probable cause, or legal justification; and denying Mr. Limongelli the proper medicine as prescribed for his diagnosed serious medical conditions. These defendants include individuals who assisted, conspired to, acted in concert, and/or did engage in the violations of Mr. Limongelli's constitutional rights described herein. These defendants are sued individually and in their official capacities.

13. At all times relevant herein, New York City Police Department Sergeant DORIS LOPEZ, New York City Police Department Detective BRIAN D. O'HANLON (Shield # 3581), and JOHN DOEs 1-5 have acted under color of state law in the course and scope of their duties and functions as agents, employees, contractors and/or officers of the CITY, the NYPD, and/or the DOC in engaging in the conduct described herein. At all times relevant herein, these defendants have acted for and on behalf of the CITY, the NYPD, and/or the DOC with the power and authority vested in them as officers, agents, contractors, and/or employees of the CITY, the NYPD, and/or the DOC and incidental to

the lawful pursuit of their functions and/or duties as officers, employees, contractors, and/or agents of the CITY, the NYPD, and/or the DOC.

14. At all times relevant herein, New York City Police Department Sergeant DORIS LOPEZ, New York City Police Department Detective BRIAN D. O'HANLON (Shield # 3581), and JOHN DOEs 1-5 violated clearly established rights and standards under the Fourth and Fourteenth Amendments of the United States Constitution, and Article I, §§ 6 and 12 of the New York State Constitution, which a reasonable police officer and/or public official in their respective circumstances would have known.

## COMPLIANCE WITH GENERAL MUNICIPAL LAW

15. Mr. Limongelli served his Notice of Claim upon the City of New York by hand delivery on November 23, 2011, within 90 days of the events giving rise to Mr. Limongelli's claims.

16. This action is filed within one year and 90 days of the events giving rise to Mr. Limongelli's claims.

## STATEMENT OF FACTS

17. On August 30, 2011, shortly before 3:00 p.m., two NYPD officers arrested Mr. Limongelli in Bronx County for possession of a controlled substance, and transported him to the NYPD's 48th Precinct.

18. Upon information and belief, one of the arresting officers was defendant New York City Police Department Detective BRIAN D. O'HANLON (Shield # 3581), and the other arresting officer was JOHN DOE 1.

19. Upon information and belief, at the request of officers from the 48th Precinct, the New York State Division of Criminal Justice Services ("DCJS") produced a "rap sheet" for

       Mr. Limongelli, which consisted of a sixteen page document labelled "Fingerprint Response Summary," and a two-page document labelled "Additional Fingerprint Response." At the top of both documents is the annotation "NYPD PCT 048."

20. Both documents included Mr. Limongelli's full name, "Salvatore L. Limongelli"; his correct date of birth, February 25, 1971; and an accurate physical description of Mr. Limongelli as a white male, five feet six or seven inches tall, and 230 pounds. The Fingerprint Response Summary included an accurate photograph of Mr. Limongelli, which matches this description, and Mr. Limongelli's correct Social Security Number. Both documents also included a "NYSID" ("New York State Identification") number for Mr. Limongelli, which was 07033421Y.

21. Page one of the Fingerprint Response Summary indicates that Mr. Limongelli had no open warrants and no active New York City warrants.

22. The last page of the Fingerprint Response Summary indicated the results of a check done through the FBI's National Crime Information Center ("NCIC"), which revealed no warrants associated with Mr. Limongelli's FBI number, no warrants associated with Mr. Limongelli's social security number, and no warrants associated with the combination of Mr. Limongelli's name, date of birth, race, and sex.

23. The Additional Fingerprint Response report included a heading labelled "FBI Identification Results," below which was stated: "The FBI identification response, received on August 30, 2011, indicated no FBI data other than New York State history. The information previously provided in your NYS Criminal Justice Services fingerprint response represents the computerized history for this individual."

24. Upon information and belief, the New York City Criminal Justice Agency produced a report labelled, "Interview Report," which upon information and belief is often referred to as the "CJA report." The CJA report noted that the case came from the 48th Precinct, and stated that Mr. Limongelli's correct full name, date of birth, sex, and race. The CJA report included the same NYSID number, 07033421Y, as the DCJS documents. On the CJA report, under "Warrant Attached to NYSID?" it stated "NONE." Under "Prior Warrant?" it stated "NO."

25. Despite the lack of any warrant for Mr. Limongelli, while Mr. Limongelli was at the 48th Precinct, defendant New York City Police Department Sergeant LOPEZ told Mr. Limongelli that he had a Kings County warrant for murder under the name Tim Duncan, who appears in a police mug shot as a black man with dreads. Defendants O'HANLON and JOHN DOE 1 questioned Mr. Limongelli about the warrant.

26. Mr. Limongelli, who had never gone by the name Tim Duncan and was a white male who had never worn his hair in dreads, explained to the defendants that he had been mistakenly detained for this warrant for Mr. Duncan twice before.

27. Upon information and belief, the NYPD wrongly ascribed Mr. Duncan's warrant to Mr. Limongelli on at least two prior occasions between 1997 and 2001.

28. Nonetheless, a report labelled "Alerts Sheet," was later produced when Mr. Limongelli was arraigned, which indicated that there was an active bench warrant associated with NYSID number 07033421Y. The Alerts Sheet identified the active bench warrant as warrant number R2000200305, dated "00-Mar-00," indictment number 11993-97, and was for a person named Ewart Duncan with a date of birth of May 10, 1958.

29. Mr. Limongelli had never gone by the name Ewart Duncan, and his birthday, which was correctly listed on the Alerts Sheet, was February 25, 1971.

30. A printout from the NYPD labelled "Mugshot Pedigree" identified Ewart Duncan as a black male, five feet six inches tall, 160 pounds, with long, black, "rastifarn" (sic) type hair and blue eyes. The picture on this printout showed Mr. Duncan to be an African-American male with twists or dreads.  Mr. Duncan and Mr. Limongelli were plainly two different people.  Upon information and belief, the Mugshot Pedigree was readily available to the NYPD.

31. Upon information and belief, it is the policy and/or practice of the NYPD to generate the Alerts Sheet.

32. Upon information and belief, the Alerts Sheet was produced by the NYPD before Mr. Limongelli was turned over to the DOC, and was available to both agencies.

33. Upon information and belief, the NYPD has a policy and/or practice of maintaining a so-called "e-arraignment computer" database into which information regarding, among other things, warrants, is entered.

34. Upon information and belief, it is the NYPD's policy and/or practice to generate Alerts Sheets from the information stored in this e-arraignment computer database.

35. Upon information and belief, the NYPD has a policy and/or practice of printing out an Alerts Sheet and attaching it to the defendant's arraignment package in front of the rap sheet produced by DCJS.  Upon information and belief, the arraignment clerk will use the warrant information from an Alerts Sheet to pull warrants that are available electronically.

36. Despite the fact that the name and birth date on the bench warrant did not match Mr. Limongelli's name or birth date, and that it was clear from Mr. Duncan's Mugshot Pedigree that Mr. Limongelli was not Mr. Duncan; and that on at least two other occasions, the NYPD had wrongly ascribed this same warrant to Mr. Limongelli and therefore had notice that this warrant was not for Mr. Limongelli, the NYPD produced an Alerts Sheet for Mr. Limongelli indicating that the bench warrant for Mr. Duncan was for Mr. Limongelli.

37. Mr. Limongelli was arraigned in Bronx County Criminal Court on August 31, 2011, under docket number 2011BX048342. During that appearance, the district attorney stated that Mr. Limongelli "has a bench warrant out of Kings County, warrant number 1199397." Mr. Limongelli's attorney explained that the warrant was not for him. The judge stated that "I have absolutely no information on it other than this warrant" and that "we went through a lot of trouble to check it out and to check that with Brooklyn, and Brooklyn's answer was to lodge it[,] [s]o there is no hope for that," and that "hopefully . . . in Kings County[] this can be resolved one way or the other." The judge set $500 bail on the drug possession offense that Mr. Limongelli was arrested for on August 30, 2011.

38. After Mr. Limongelli was arraigned and bail was set, the NYPD and/or DOC continued to detain him and transported him to Kings County Supreme Court.

39. At the Kings County courthouse, Mr. Limongelli had a discussion with a transporting officer, defendant JOHN DOE 2, in the elevator of the courthouse prior to his court appearance. Upon information and belief, the officer had a document with him reflecting that the physical description of Ewart Duncan did not match Mr. Limongelli's

appearance.  The officer said to Mr. Limongelli, in sum or substance, "I have to make a decision about you in three minutes."

40. Shortly thereafter, on or about on Thursday, September 1, 2011, Mr. Limongelli appeared before Kings County Supreme Court on Indictment Number 11993-97, in relation to the warrant for Mr. Duncan.  Though the Fingerprint Response Summary indicated that Mr. Limongelli had no warrants, the Alerts Sheet indicated that the warrant was for an individual with a different name and birthday, and the Mugshot Pedigree for Mr. Duncan indicated that Mr. Limongelli was clearly not Mr. Duncan; and though, upon information and belief, these documents were available to the NYPD and the DOC, Mr. Limongelli was not released.  Instead, he was told that the warrant could not be vacated at that time and that he would have to be brought back to Kings County Supreme Court on Tuesday, September 6, 2011.  Mr. Limongelli was then transported to Riker's Island, where he remained in custody.

41. On September 2, 2011, Mr. Limongelli again appeared in Bronx County Supreme Court on docket number 2011BX048942 in relation to his August 30, 2011 arrest. Mr. Limongelli's attorney explained to the judge about the unresolved Kings County warrant.  The court continued Mr. Limongelli's bail of $500, and set a next court date of September 7, the day after Mr. Limongelli was next scheduled to appear in Kings County Supreme Court regarding the warrant.

42. When Mr. Limongelli appeared in Bronx County Supreme Court on September 2, 2011, his mother, Raffaella Limongelli, was also present in the courtroom.  Ms. Limongelli was able to pay Mr. Limongelli's $500 bail and secure his release in the Bronx County case, docket number 2011BX048942, on that date.  However, Ms. Limongelli knew that,

because Mr. Limongelli was being detained on the Kings County warrant for Indictment Number 11993-97, Mr. Limongelli would not be released even if she paid the bail on that date. Therefore, Ms. Limongelli did not post the $500 bail on September 2, but waited until after the warrant was vacated to pay Mr. Limongelli's bail in the Bronx County case.

43. After Mr. Limongelli's appearance in Bronx County Supreme Court on September 2, 2011, he was transported back to Riker's Island, where he continued to be detained.

44. On September 7, 2011, Mr. Limongelli was again transported to Kings County Supreme Court, and again appeared in Indictment Number 11993-97.

45. On that date the Assistant District Attorney, Melissa Cardinale, stated on the record: "[T]his person before you is not the defendant," "Ewarat Duncan." (It is not clear why Mr. Duncan's name is spelled "Ewarat" in the transcripts of this hearing.). ADA Cardinale further stated: "The defendant Mr. Ewarat used an alias and a NYSID number that was very similar to the man before you Mr. Salvatore. The correct NYSID for Ewarat Duncan is 8344566Z that was the record that we had made the last time in 1999 when we appeared on this case. There is a problem with the, I guess, the New York Police Department's records. It needs to be rectified so this doesn't happen again to this gentleman."

46. ADA Cardinale further stated: "I'm looking at the mugshot[] pedigree of the correct Ewarat Duncan his NYSID is the same as this gentleman. He keeps getting picked up for this gentleman. Obviously they do not look alike."

47. The Kings County Supreme Court judge presiding at the September 7th hearing ordered Mr. Limongelli to be released on that case.

48. After Mr. Limongelli was released in Indictment Number 11993-97 in Kings County, his mother paid his $500 bail in the Bronx County case; and Mr. Limongelli was released from Riker's Island on or about September 7 or 8, 2011.

49. Upon information and belief, on at least two occasions between 1997 and 2001, the NYPD and/or DOC erroneously detained Mr. Limongelli in relation to the same warrant for Mr. Duncan. Each time, Mr. Limongelli was forced to appear in Kings County Supreme Court to have the warrant vacated, and each time it was determined that Mr. Limongelli was not the subject of the warrant. Nonetheless, despite these incidents when defendants wrongfully detained Mr. Limongelli for the same reason, the NYPD failed to disassociate Mr. Limongelli's NYSID number from the warrant for Mr. Duncan, or remedy the problem to prevent it from recurring.

50. While Mr. Limongelli was detained at Riker's Island between September 1 and September 7 or 8, 2011, he was denied necessary medical treatment for his serious medical needs.

51. At the time of his arrest, Mr. Limongelli was enrolled in a drug treatment program and was receiving methadone, a medicine used to prevent withdrawal symptoms in patients who were addicted to opiate drugs and being treated to end their drug addiction. Individuals who are prescribed a regular dose of methadone and suddenly stop taking methadone can experience severe withdrawal symptoms including sweating, chills, muscle pain, restlessness, teary eyes, runny nose, and other symptoms.

52. Prior to being arrested, Mr. Limongelli was receiving a daily dose of methadone, of approximately 55 mg per day. Mr. Limongelli was also prescribed other medications, including Xanax, Prozac, and medication for blood pressure, Nifedipine.

53. Mr. Limongelli made his conditions and need for medication known to police officers and at the time of his arrest and to medical personnel at Riker's Island during his incarceration. Mr. Limongelli provided these medical personnel with all necessary information to verify his prescriptions and doses. Mr. Limongelli was told that he would be provided with his medication after medical personnel were able to verify his prescriptions and doses.

54. Nonetheless, Mr. Limongelli was denied any medication initially, and later, was provided with either the incorrect medications and/or the incorrect dosages of his medications.

55. As a result, Mr. Limongelli experienced withdrawal symptoms from the lack of methadone, including, but not limited to, severe headaches, stomach discomfort, chills, sweating, and rapid weight loss. Additionally, Mr. Limongelli was not properly treated for these withdrawal symptoms and was not provided with the required doses of methadone to alleviate his symptoms.

56. Following his release from custody, Mr. Limongelli required increased medical treatment to recuperate from the injuries he sustained as a result of being denied necessary medical care while incarcerated at Riker's Island. He has also experienced panic attacks and sleep loss, and has sought out psychiatric treatment to cope with the stress and anxiety caused by his wrongful incarceration and denied medical care.

57. Mr. Limongelli's wrongful detention and denied medical care caused him mental anguish, emotional injuries, pain and suffering, embarrassment, humiliation, shame, indignity, damage to his reputation, and physical injuries, and caused him to incur medical expenses.

## FIRST CAUSE OF ACTION
### Violation of Civil Rights Pursuant to 42 U.S.C. § 1983
### (Fourth and Fourteenth Amendments)

58. The plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

59. In committing the acts and omissions complained of herein, defendants acted under color of state law to deprive Mr. Limongelli of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

   a. the right to be free from unreasonable seizures;

   b. the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, and of which detention Mr. Limongelli was aware and to which he did not consent;

   c. the right to be free from deprivation of life, liberty, or property without due process of law; and

   d. the right to necessary medical care while incarcerated.

60. As a direct and proximate result of defendants' deprivation of Mr. Limongelli's constitutional rights, Mr. Limongelli suffered the injuries and damages set forth above.

61. The conduct of defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### New York State Constitutional Violations

62. The plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

63. Such conduct breached the protections guaranteed to Mr. Limongelli by the New York State Constitution, Article I, §§ 6 and 12, including, but not limited to:

   A. the right to be free from unreasonable seizures; and

   B. the right to be free from deprivation of life, liberty, or property without due process of law.

64. Defendants' deprivation of Mr. Limongelli's rights under the New York State Constitution resulted in the injuries and damages set forth above.

### THIRD CAUSE OF ACTION
*Respondeat Superior*

65. The plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

66. Defendant THE CITY OF NEW YORK is liable for the actions of the individual defendants under the doctrine of r*espondeat superior*.

### FOURTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**

67. Mr. Limongelli realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

68. The defendants, by the aforementioned acts, did commit extreme and outrageous conduct and thereby intentionally and/or recklessly caused Mr. Limongelli to suffer severe mental and emotional distress, pain and suffering, and damage to name and reputation.

69. Defendants committed the foregoing acts intentionally, willfully and with malicious disregard for Mr. Limongelli's rights and are therefore liable for punitive damages.

### FIFTH CAUSE OF ACTION
**Negligent Infliction of Emotional Distress**

70. The plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

71. The defendants, by their aforementioned acts, did negligently cause Mr. Limongelli to suffer mental and emotional distress, pain and suffering, and damage to name and reputation.

### SIXTH CAUSE OF ACTION
### Negligence

72. The plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

73. The defendants owed Mr. Limongelli a duty to use due care, including a duty not to incarcerate Mr. Limongelli without probable cause, reasonable suspicion, or any other legal authority; and to provide Mr. Limongelli with necessary medical care for his serious medical needs.  By their aforementioned acts, defendants negligently breached their duty to use due care in the performance of their duties, and failed to perform their duties as a reasonably prudent and careful officer would have done under similar circumstances.

74. The negligent actions of the defendants directly and proximately caused Mr. Limongelli's injuries and damages set forth above.

### DEMAND FOR RELIEF

**WHEREFORE**, the plaintiff demands on behalf of Mr. Limongelli's estate the following relief jointly and severally against all defendants:

(a) compensatory damages for physical and emotional injuries; financial loss; and injuries to reputation suffered by Mr. Limongelli by reason of defendants' unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial;

(b)     punitive damages against the individual defendants to the extent allowable by law;

(c)     attorneys fees;

(d)     the costs and disbursements of this action; and

(e)     such other and further relief as appears just and proper.

Dated: New York, New York
       November 27, 2013

_____
Jonathan C. Moore
Joshua S. Moskovitz
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, Suite 1600
New York, New York 10016
(212) 490-0400

*Attorneys for the Plaintiff*